CRAIGHEAD COUNTY *v.* HUMPHREY, STATE AUDITOR.

4-8672                                                 217 S. W. 2d 351

Opinion delivered January 17, 1949.

Rehearing denied February 28, 1949.

*Marcus Fietz* and *Cooper Jacoway,* for appellant.

*Guy E. Williams,* Attorney General, *Cleveland Holland,* Assistant Attorney General, *W. W. Sharp, Norton & Norton, Norfleet & Norfleet, Mann & McCulloch, O. E. Westfall, Reece Caudle, A. M. Coates, Rowell, Rowell & Dickey, Burke & Burke* and *Daggett & Daggett,* for appellee.

GEORGE ROSE SMITH, J. This case is a sequel to *Clayton* v. *City of Little Rock,* 211 Ark. 893, 204 S. W. 2d 145. There we held that Act 104 of 1945 did not effectively appropriate money in the Municipal Bond Retirement Fund. The result was that an unappropriated sum of $48,444.64 remained in that fund at the end of the biennium on June 30, 1947. Appellant filed this action

to compel the State Treasurer to credit that money to the Municipal Turnback Fund, pending future disposition by the General Assembly. Various paving districts intervened below and as appellees here urge that the money should remain in the Bond Retirement Fund, also pending future legislative action. The decision hinges on an analysis of the pertinent statutes.

Act 4 of 1941, the Refunding Act, set aside $750,000 of annual highway revenues for five purposes stated in § 12. No apportionment of these funds among the specified purposes was made by Act 4 itself, this matter being left to future legislation.

Act 385 of 1941 made the first legislative allocation of this $750,000 of annual revenue. After making disposition of the first $340,000, this Act provides for a division of the remainder between the Municipal Bond Retirement Fund and the Municipal Turnback Fund. Section 10 directs that the Bond Retirement Fund be used to repay the *cost* incurred by municipalities and improvement districts in constructing streets which became part of the State highway system. Section 4 of the Act, on which appellant places its sole reliance, directs the State Treasurer to credit annually to the Municipal Turnback Fund the amount by which the Municipal Bond Retirement Fund exceeds its debt service requirements.

Had there been no later legislation, the political subdivisions which had built continuations of the State highway system would not have received additional State aid after reimbursement for the costs of construction. It is conceded that these costs were not fully repaid until 1945, when the Bond Retirement Fund borrowed $107,-757.05 from the General Revenue Fund, as authorized by Act 307 of 1945. That loan enabled the Bond Retirement Fund to effect full repayment of the construction outlay previously made by the municipalities and improvement districts.

In 1943, however, by Act 288 the General Assembly had modified the original allocation of funds. This Act, as construed in the *Clayton* case, *supra,* provided ad-

ditional State aid to municipalities and districts. It directed that, after the repayment of construction costs was completed, "all moneys coming into the Municipal Bond Retirement Fund . . . shall be distributed for the benefit of such municipalities and municipal improvement districts" for the purpose of paying bonded indebtedness. The extent of such payments was to be determined by taking the ratio in area of the State highway continuation to the entire improvement. Beneficiaries of this gratuity were required to file claims annually in order to share in the funds.

In the fiscal year ending June 30, 1946, the Bond Retirement Fund repaid the loan from the General Revenue Fund, leaving $77,234.94 available for aid under Act 288. The State Treasurer prorated part of this money among the beneficiaries which had filed claims under Act. 288; but he retained the $48,444.64 now in dispute, apparently because of uncertainty as to the outcome of the *Clayton* case, then pending. When we later held that the 1945 appropriation failed, the result was that this sum had entered the Bond Retirement Fund under the Refunding Act, but had not been withdrawn by the legislature. The question is, should it stay there or should it be transferred to the Municipal Turnback Fund?

Appellant's position is that § 4 of Act 385 of 1941 has not been repealed, and therefore any unexpended balance in the Bond Retirement Fund should be allocated to the Turnback Fund. We agree that there has been no repeal of § 4, but we hold that the scope of its operation was restricted by § 1 of Act 288 of 1943. By the later Act the General Assembly directed that "all moneys" coming into the Bond Retirement Fund (after repayment of construction costs) be used to pay claims filed annually by municipalities and districts. It may well be that if such claims had not equaled the sum coming into the fund in any fiscal year, the excess should then have been credited to the Turnback Fund under Act 385. To this extent § 4 was still effective. But here it is stipulated that the unpaid claims in the fiscal year

ending on June 30, 1946, did exceed $48,444.64. The only reason the money was not so applied was our ruling that the appropriation was inoperative.

It is true that Act 288 states that all moneys shall be "distributed" to the beneficiaries, and distribution ordinarily means payment. But Act 288 did not purport to be an appropriation act; it was merely an amendment of the original scheme of apportionment under Act 385. The General Assembly undoubtedly intended for the municipalities and districts to have these funds to the extent of their claims under Act 288. The fact that this intention was not accomplished, owing to the particular wording of the 1945 appropriation act, does not mean that the original intention of Act 385 was thereby revivified. On the contrary, the funds should remain in the Municipal Bond Retirement Fund, as ordered by the trial court. (It is appropriate to add that Act 384 of 1947 further modifies the disposition of these funds, but its reference to the "excess" clearly means the difference between the amount entering the fund in any fiscal year and the amount intended to be otherwise appropriated in that year. Consequently the Act has no bearing on this dispute, which arose before its passage.)

Affirmed.

MILLWEE, J., not participating.